**Franz Bruggemeier**, OSB #163533
**Alex Meggitt**, OSB #174131
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
fbruggemeier@ojrc.info
ameggitt@ojrc.info
Telephone: 503-944-2270
Facsimile: 971-275-1839

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| CLIFFORD EIFFLER-RODRIGUEZ, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SALEM, JUDY DAN, AND JOHN DOES 1 & 2 <br><br> Defendants. | Case No. 6:23-cv-00201 <br><br><br> COMPLAINT <br><br> Civil Rights Action (42 U.S.C. § 1983) <br><br><br> JURY TRIAL DEMANDED |

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. While he was engaged in expression protected by the First Amendment and committing no criminal act, City of Salem police officers unlawfully shot Plaintiff Clifford Eiffler-Rodriguez with crowd control munitions and arrested him. These individual Defendants acted pursuant to policies and customs maintained by the City of Salem that allowed or encouraged the individual Defendants to injure Mr. Eiffler-Rodriguez and violate his rights.

COMPLAINT
Page 1 of 9

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(a)(3), (4).

## VENUE

2. Venue is proper within the District of Oregon because a substantial part of the events giving rise to this claim occurred in this judicial district, and all parties reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in Salem, Marion County, Oregon.

## PARTIES

3. Clifford Eiffler-Rodriguez, Plaintiff, at the time of filing and all material times, was a citizen of the State of Oregon.

4. Defendant City of Salem (hereinafter, "City") is a political subdivision of the State of Oregon with the capacity to sue and be sued. The City runs the Salem Police Department, which hosts a Mobile Response Team (MRT) for crowd control and the use of "less than lethal" crowd control weapons. On information and belief, each and every decision to violate Plaintiff's rights was made and/or ratified by a sufficiently high level as to be policy decision of the City. On information and belief, the law enforcement officers who violated Plaintiff's rights were acting pursuant to the practice or policy of the City.

5. Defendant Judy Dan was, at all times relevant to this complaint, a Salem police officer. Defendant Dan was, at all times relevant to this complaint, acting in a supervisory capacity over

officers John Doe 1 and John Doe 2. At all times relevant to this complaint, Defendant Dan was acting under color of state law. She is sued in her individual capacity.

6.     Plaintiff does not know the name of Defendant John Doe 1, and thus sues them under a fictitious name. Defendant John Doe 1 is a Salem police officer and acted as a member of the MRT. At all times relevant to this complaint, Defendant John Doe 1 was acting under color of state law. Defendant Doe 1 is sued in their individual capacity.

7.     Plaintiff does not know the name of Defendant John Doe 2, and thus sues them under a fictitious name. Defendant John Doe 2 is a Salem police officer and acted as a member of the MRT. At all times relevant to this complaint, Defendant John Doe 2 was acting under color of state law. Defendant Doe 2 is sued in their individual capacity.

## FACTUAL ALLEGATIONS

**I.     The Incident**

8.     On August 10, 2021, a group calling itself the "Church at Planned Parenthood" held a rally outside the Planned Parenthood located at 3825 Wolverine St NE (the intersection of Wolverine and Coral Ave) in Salem, Oregon. The group's goals included intimidating community members from exercising their rights to healthcare and family planning. Those attending the "Church" rally included members of the far-right "Proud Boys" such as Tusitala "Tiny" Toese, who at that time had an open warrant for his arrest.

9.     A number of counterprotesters showed up to express their opposition to the right-wing rally. Plaintiff Clifford Eiffler-Rodriguez was one of the counterprotesters. He brought a megaphone with him to aid in expressing his opposition to the "Church."

10. At some point after the opposing demonstrations began, the Salem Police MRT showed up, dressed in "riot gear" including helmets and masks. The officers were variously armed with batons and "less than lethal" projectiles, including 40mm launchers and "pepper ball" guns. The MRT announced that an unlawful assembly had been declared and told people to leave the area.

11. The Salem police MRT formed a line across Coral Ave, and many of the counterprotesters dispersed. As Mr. Eiffler-Rodriguez walked away from the advancing line of riot gear-clad officers, Defendant Dan pushed him several times with her baton over approximately 5 to 7 minutes. She apparently did not believe that Mr. Eiffler-Rodriguez was dispersing quickly enough.

12. While walking away from the officers, Mr. Eiffler-Rodriguez spoke into his megaphone and expressed his displeasure with the officers' actions. He remained on the sidewalk as he walked away from them.

13. John Does 1 & 2 then shot Mr. Eiffler-Rodriguez with 40mm rounds and pepperballs from point-blank range. They shot him at least three times in the chest, once in the left thigh, and once on his upper right arm. Each impact had enough force to break the skin. The bruising from the impact munitions would last for weeks.

14. The Defendants did not hit Mr. Eiffler-Rodriguez with impact munitions while attempting to use a legally permissible amount of force on another individual in good faith. There were no other protesters near Mr. Eiffler-Rodriguez at the time the Doe defendants shot him.

15. Defendant Dan then tackled Mr. Eiffler-Rodriguez and arrested him.

16.     During the entirety of this encounter, Mr. Eiffler-Rodriguez never engaged in any resistance against Defendants' actions that went beyond passive resistance. He posed no threat of harm to anyone.

17.     On September 8, 2021, on the basis of Defendant Dan's arrest report, the Marion County District Attorney's office, via information, charged Mr. Eiffler-Rodriguez with one count of interfering with a police officer and one count of harassment, naming Defendant Dan as the victim of each charge.

18.     On February 24, 2022, the Marion County District Attorney's office filed a motion to dismiss the charges against Mr. Eiffler-Rodriguez on the basis that "further investigation reveal[ed] it would be in the interest of justice that said action be dismissed." That same day, the court signed an order dismissing all charges.

**II. *Monell* Allegations**

19.     The City has a custom or policy of allowing officers to use "crowd control" and "less than lethal" weapons against individuals who are engaged only in passive resistance and/or who pose little or no threat of harm to others.

20.     Alternatively, the City has an actual practice of allowing officers to use "crowd control" and "less than lethal" weapons against individuals who are engaged only in passive resistance and/or who pose little or no threat of harm to others.

21.     The City has, in general, failed to train officers on constitutional standards for use of force in crowd control situations. The failure to train officers on the *Graham v. Connor* Fourth Amendment standard regulating the use of force against individuals led to officers using unconstitutional and excessive force against Mr. Eiffler-Rodriguez.

22.     On July 19, 2021, several weeks before police injured Mr. Eiffler-Rodriguez, the Oregon legislature enacted 2021 Or Laws ch 540 (HB 2928). The law became effective immediately. Among other restrictions on police use of force in crowd control situations, the law forbids law enforcement agencies from using munitions containing "chemical incapacitants" in crowd control scenarios that did not constitute a "riot" and the munitions were not necessary to terminate "riotous behavior." One of the Doe defendants fired "pepper balls," munitions containing chemical irritants, at Mr. Eiffler-Rodriguez from point blank range when he was not engaged in "riotous behavior" and when there was no "riot" otherwise, in violation of HB 2928.

### Claim 1: Fourth Amendment – Unreasonable Seizure – Individual Liability
### (42 U.S.C. § 1983; Defendant Dan)

23.     Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

24.     Under the Fourth Amendment, a police officer may not arrest a person without a warrant unless the officer has probable cause to believe the person is committing a crime.

25.     Mr. Eiffler-Rodriguez was not committing a crime at the time Defendant Dan arrested him. Defendant Dan did not have probable cause to arrest Mr. Eiffler-Rodriguez.

26.     Defendant Dan's arrest of Mr. Eiffler-Rodriguez was objectively unreasonable.

27.     As a direct and proximate result of Defendant's unconstitutional arrest, Mr. Eiffler-Rodriguez suffered the deprivation of his civil rights and associated mental harms, outrage, betrayal, offense, indignity, and insult causing damage in amounts to be determined at trial.

### Claim 2: Fourth Amendment – Excessive Force – Individual Liability
### (42 U.S.C. § 1983; Defendants Dan, John Doe 1 and 2)

28.     Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

29. Under the Fourth Amendment, when seizing an individual, a police officer may not use more force than is objectively necessary under the totality of the circumstances.

30. Defendants John Doe 1 and 2 used excessive force against Mr. Eiffler-Rodriguez by firing 40mm beanbag munitions and pepperball munitions at him, as he was not committing a crime at the time and posed no physical threat to the Defendants or any other officers.

31. Defendant Dan used excessive force against Mr. Eiffler-Rodriguez by tackling him, when he was not committing a crime at the time and posed no physical threat to the Defendants or any other officers.

32. At the time she tackled him, Defendant Dan had no objectively reasonable reason to use force against Mr. Eiffler-Rodriguez.

33. Defendants used excessive force against Mr. Eiffler-Rodriguez in reckless disregard of his rights.

34. As a direct and proximate result of Defendants' unconstitutional use of excessive force against him, Mr. Eiffler-Rodriguez suffered physical injury, the deprivation of his civil rights, and associated mental harms, outrage, betrayal, offense, indignity, and insult causing damage in amounts to be determined at trial.

### Claim 3: Fourth Amendment – Unlawful Pattern and Practice – Municipal Liability
### (42 U.S.C. § 1983)

35. Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

**Count 1: Municipal Policy or Custom**

36. Defendants Dan and John Does 1 & 2, acting under color of state law, deprived Mr. Eiffler-Rodriguez of his rights, as described above.

37. In violating Mr. Eiffler-Rodriguez's rights, Defendants acted pursuant to the City of Salem's official policy or widespread or longstanding practice of allowing its officers to use "crowd control" and "less than lethal" weapons against individuals who are engaged only in passive resistance and/or who pose little or no threat of harm to others.

38. The City of Salem's policy or custom of allowing officers to use "crowd control" and "less than lethal" weapons against individuals who are engaged only in passive resistance and/or who pose little or no threat of harm to others caused the deprivation of Mr. Eiffler-Rodriguez's rights.

**Count 2: Failure to Train**

39. The training policies of the City of Salem regarding use of force during crowd control incidents were not adequate to prevent the individual Defendants from violating Mr. Eiffler-Rodriguez's rights. The City of Salem was deliberately indifferent to the substantial risk that its training policies were inadequate to prevent violations of demonstrators' rights by Salem Police Department officers.

40. The City of Salem's failure to provide adequate training regarding (1) use of force during crowd control incidents and (2) changes in use of force requirements pursuant to HB2928 caused the deprivation of Mr. Eiffler-Rodriguez's rights by the individual Defendants.

## REASONABLE ATTORNEY'S FEES AND COSTS

41. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. § 1983.

42. Plaintiff requests that the Court grant a reasonable attorney's fee in this action.

## CONCLUSION

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.   For economic, non-economic, and punitive damages in an amount to be determined at trial

B.   For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988; and

C.   Such other relief as the court deems just and proper.

DATE:  February 10, 2023.

> /s/ Alex Meggitt
> Alex Meggitt, OSB #174131
> ameggitt@ojrc.info
> PO Box 5248
> Portland, OR 97208
> Attorney for Plaintiff